WHEELER *vs.* THE ROCHESTER AND SYRACUSE RAILROAD COMPANY.

The defendants procured an appraisal of the lands of the plaintiff, taken by them for their railroad. At the time of the appraisal no location of the farm crossing was indicated on the profile before the commissioners, and there had been no agreement in reference to it, or any location of it, except that the plaintiff, before the commissioners, and in the presence of the agents of the defendants, pointed out where he wanted the crossing to be made, to which the latter made no objection. After the appraisal and payment of the sum awarded, the defendants proceeded to construct their road through the plaintiff's premises, by raising a high embankment, locating the crossing at a different point from that indicated by the plaintiff, where it would be unsuitable and inconvenient for him, and refusing to locate where he requested, which place was most suitable and convenient for the plaintiff in carrying on his farm. *Held*, that it was a proper case for an injunction to restrain the defendants from proceeding with the construction of their road through the plaintiff's land, until they should either provide a suitable and convenient crossing, according to the plaintiff's choice, or make compensation to him by agreement or appraisal for being subjected to an inconvenient and unsuitable one ; and that the plaintiff was not bound to wait until the defendants had completed their work before commencing his action. SELDEN, J. dissented.

A regular appraisal of lands taken for a railroad according to the statute, and payment of the compensation awarded, vests in the company the right and title of the former owners, for all the purposes of the franchise : subject, however, to the duty on the part of such company to make and maintain suitable farm crossings, and the right of passage on the part of such former owner over the road at such crossings.

Where the owner of the land and the company can not agree upon the location of the crossing, it is the right of such owner to determine where he will have it, and the duty of the company to make it at the place he selects.

Such company may, however, select a different location, by making compensation for the difference between the two, to the owner. The owner must exercise his right of selection reasonably, with a view to his own benefit and convenience, and not capriciously to injure the company, or the law will not protect him.

Where, at the time of the appraisal, to fix the compensation for the land taken, there is no agreement as to the location of the crossing, and none is indicated upon the profile, the presumption is that the commissioners fixed the compensation in reference to a crossing, most suitable and convenient for the owner of the lands, and that nothing was awarded as compensation for an inconvenient crossing.

The term " farm crossings" in the general railroad act, means a passage under the road as well as over it. But it is to be made under the road only in cases when the road is so constructed as to admit of no proper passage over; and it is the right of the person, whose lands are taken, to have the crossing upon his own land.

MOTION to dissolve an injunction. The plaintiff commenced his action by summons and complaint against the defendants, praying for a perpetual injunction restraining the defendants from constructing their railroad track through the farm of the plaintiff, without providing a suitable farm crossing by a viaduct at a point selected by the plaintiff, nearly in front of his buildings and directly opposite to the lane leading to his barn. There had been an appraisal by commissioners, and compensation awarded for the land taken, which had been paid by the defendants. A temporary injunction had been granted, which the defendants now moved to dissolve. As several of the points raised required a construction of the railroad act, the motion was, by consent, argued at the general term. The facts will more particularly appear in the opinion.

*T. Hastings* and *H. Martindale,* for the plaintiff.

*Smith & Griffin,* for the defendants.

JOHNSON, J. This is obviously a proper case for both a temporary and a perpetual injunction, if the case made by the complaint shall remain substantially uncontroverted.

It is true, as urged by the defendants' counsel, that the de-

Wheeler *v.* Rochester and Syracuse Railroad Co.

fendants, by the appraisal and the payment of the amount awarded as compensation, acquired a complete and perfect title to the land for their railroad track, as against the plaintiff, for the purpose of constructing their road substantially according to the plan contemplated and exhibited at the time of presenting their petition, and of the hearing before the commissioners, and using it for the general objects of the franchise.

But this right and title are both subject, nevertheless, to the duty imposed upon the corporation by statute, to erect and maintain " farm crossings of the road for the use of the proprietors of the lands adjoining such railroad." Subject to this duty on the part of the defendants, and this right of passage over or across the road on the part of the plaintiff, the defendants' title was complete and absolute. The plaintiff's right is that of passage merely, and not in the soil; but to that extent it is superior and paramount to the defendants'. The defendants take subject to this easement, and hold a servient estate.

If, therefore, the defendants are proceeding to construct their road in such a manner as to deprive the plaintiff of such a farm crossing as the statute contemplates, it is the duty of the court, on proper application, to restrain them until they shall secure to the plaintiff his rights thus reserved, or make him just and reasonable compensation therefor. This is substantially prayed for in the complaint.

The defendants propose to make, and are proceeding to construct their track through the plaintiff's farm, by raising an embankment of solid earth in front of his dwelling house and other buildings, extending east and west in an unbroken line, nearly fifty rods, from 15 to 18 feet in height, separating the farm in two parts, and the house from the orchard and garden, which are some 8 or 10 rods apart.

This is to be a permanent structure, and if no suitable crossing is secured, must necessarily prove a perpetual injury and grievance—a standing invasion of the plaintiff's rights—equivalent to a nuisance. That it is a proper case for an injunction, therefore, upon this state of facts, seems scarcely to admit of argument.

The defendants, in their answer and affidavits, show that they design and intend to secure to the plaintiff two farm crossings, one about twenty-four rods east of his dwelling house, on a sloping piece of ground where the embankment terminates, and the surface of the grade and of the earth are equal; and another about the same distance west of the house where the railroad crosses over the public highway. And these two, they alledge, are sufficiently convenient to answer the requirements of the statute.

This leads to the consideration of the important question as to how this duty is to be discharged by the corporation, and the reserved rights of the land owners secured. Whose interests and convenience are to be first consulted? Who is to have the right of choice in the location of the crossing? I am clearly of the opinion that the interest and convenience of the land-owner is to be first consulted, and that he has the right of selecting the location of the crossing, where the parties disagree.

The legislature doubtless intended to secure to the farmer the crossing most convenient to him, in the reasonable and customary use and occupation of his premises, so as to cause him the least possible injury and annoyance, consistent with the nature and proper use of the franchise. It is not to be presumed that the legislature intended to confer this important right of choosing the locating of the crossing for the owner of the adjacent land upon the corporation, as no such intention is anywhere expressed or implied. The right of choice must obviously reside somewhere, and it seems to me the soundest reasons of policy and propriety dictate that it should be with the landowner. Were it otherwise, it would be in the power of the corporation to cause serious injury and loss to the adjacent landowner, by making remote and inconvenient crossings for him, to avoid what its officers and agents might deem, unreasonable trouble and expense. And this, too, without being in any way responsible for the injury occasioned in all cases where the crossing was not located and marked on the map or profile at the time of the appraisal. The statute has not made it the duty of the corporation to indicate the location of the farm crossing upon the

Wheeler *v.* Rochester and Syracuse Railroad Co.

map and profile, and where it is omitted it would be impossible for the commissioners to take an inconvenient or improper location into their estimate of damages. The landowner must, however, in this as in all other cases of right of election, exercise it reasonably, with reference to his own convenience in prosecuting his farming operations, and not capriciously and wantonly to annoy the corporation and cause them unnecessary trouble and expense; that is, expense unnecessary to promote the convenience of the landowner. Shoul dhe undertake to do the latter, the court might be called upon to interpose and prevent injustice.

It is manifest, I think, that the location of this crossing by the plaintiff, is entirely reasonable and proper as regards his convenience, taking the situation of his buildings and fields into the account. It is equally clear that the crossings selected by the defendants will be far less convenient and suitable to the plaintiff in managing and carrying on his farm.

But the defendants' counsel contend, that inasmuch as the crossing at the point selected by the plaintiff must necessarily be by a passage under the railroad, and the defendants, in order to preserve uniformity in the construction of their work, would be driven to construct the passage with hewn stone, it would be unreasonably onerous, exceeding in cost the entire value of the plaintiff's property to be accommodated, and that therefore they ought not to be compelled to perform the duty, or be restrained in the exercise of their rights, for its non-performance. But if I have properly interpreted the statute, this is no answer. Nor does it furnish any ground of right in the defendants to locate the crossing where their burthens will be diminished at the expense of the plaintiff. The defendants, when they took the plaintiff's land, knew or were bound to know, their own duties and the plaintiff's rights; and if they did not intend to perform the duty, or make just compensation for the injury, they should not have taken it. The answer that the charge is too burthensome comes too late. It has been in nowise increased since they became owners, and they took subject to the charge. They must either relinquish the right or discharge the duty to which

it is subject. The statute must be construed in reference to general principles, and not with a view to meet and mitigate cases of particular hardship. This court has no power of absolution in such a case; nor to partition the burthens equitably between the parties. The rights of each are prescribed and fixed by statute.

This right of the plaintiff to a suitable and convenient crossing can neither be taken away nor essentially impaired, without just compensation; and this right, I have no doubt, is as much the subject of appraisal and compensation as any other. If therefore the defendants find the performance of their duties too onerous, according to the strict rights of the plaintiff, they must make him compensation for being subjected to an inconvenient and unsuitable crossing.

It is also contended on the part of the defendants, that the term "farm crossing," in the statute, means a passage over the road, and not under it; and that as no suitable passage over the road can be made at the point indicated by the plaintiff, he must be content to take one elsewhere, where the road may be conveniently crossed over, whatever may be the inconvenience and injury to him. But I think the statute admits of no such construction. The object of that part of the enactment was to enable the owner to enjoy the use of his lands, by affording convenient means of access to parts severed by the construction of the road, and it undoubtedly contemplates crossings upon the land taken between such several parcels. Not upon other lands to which such owner never had any right, whether near or remote. The right of crossing the land taken is reserved to the former owner by the statute, and the corporation has no power to deprive him of it. Crossing does not necessarily and inevitably mean passing over, though that is its most usual signification. We are to look at the object and intent of the legislature, where it is manifest and palpable as here, in order to interpret truly the language employed. I have no doubt whatever and am prepared to hold, that if the corporation so construct their road as to render a passage over it to or from the land, from which it has been severed, inconvenient or impracticable, they are bound

Wheeler *v.* Rochester and Syracuse Railroad Co.

to furnish one under it, however expensive they may find it; unless they elect to render compensation for the specific injury. The case of *Kyle* v. *The Auburn and Rochester Railroad Co.* (2 *Barb. Ch. Rep.* 489,) is no authority against this interpretation of the present railroad act, but rather in harmony with it.

It is also insisted on behalf of the defendants, that the plaintiff has been compensated for this injury in the compensation awarded by the commissioners upon their appraisal, and which the defendants have already paid. If this is so, the plaintiff, having accepted the amount awarded is remediless, or rather has no ground for asking redress. If this was a matter properly before the commissioners when they made the appraisal, the court will presume that compensation was awarded for it. The presumption is that they discharged their duties properly. But was this any part of their duty? I apprehend not. The argument seems to be, that the commissioners were bound to assume that the defendants would locate the crossing at some point most convenient and least expensive to them, without any special reference to the interest or convenience of the plaintiff; and that the profile before them and the face of the land sufficiently indicated to them where such crossing would naturally or probably be made; and that it is to be presumed therefore they included in their estimate the damages arising from the crossings as now located by the defendants. But they were bound to assume no such thing, nor could they, without a gross violation of duty. They were not called upon to locate the crossings. All they could assume in reference to it, was that the corporation would make such crossings for the plaintiff as he was entitled to by law, in the absence of all agreement between the parties, or indications on the part of the defendants as to where they desired to place it. It is conceded that the profile before the commissioners had no crossing indicated upon it; and the complaint shows that the plaintiff, in the presence of the commissioners and of the agents of the defendants, at the time of the appraisal, selected the very point for his crossing where

he now asks to have it; and that his location of it was not ob-jected to on the part of the defendants as improper or inexpedi-ent in any respect. This is not denied by the defendants, but is admitted to be true. They then had a chance to speak, but did not, by way of objection or dissent. No objection was then raised that the viaduct would be too expensive, or suggestion ventured as to the character of the structure, whether it would be of wood or stone. They apparently assented to the plaintiff's choice, and left the commissioners to infer that they agreed to it, or at least that they intended to do whatever the statute required.

The inference therefore, both upon the law and the facts, is that no compensation was awarded for the inconvenient crossing which the defendants now propose to furnish. Indeed it is by no means clear that the defendants are not estopped from deny-ing that they agreed to the crossing selected by the plaintiff before the commissioners. But I do not place it upon that ground.

The suggestion that the damages actually awarded by the commissioners are so excessive as to afford a presumption that this claim was included, can not be entertained. We can not review that appraisal here, but must assume that it was made in reference to proper subjects before the commissioners, and within the legitimate sphere of their duties. If the plaintiff has a just cause of action, he is not to be deprived of it, or prevented from prosecuting it, because of alledged errors upon other subjects of adjudication. Nor is he bound to wait till a permanent injury of this character is fastened upon him, before invoking the aid of the law. He had the right to this inhibitory process to arrest and enjoin the defendants from prosecuting their work till they should consent to perform their duty.

The injunction must therefore be retained until the hearing, unless the defendants elect to stipulate that the same commis-sioners may appraise the damages and award compensation for this specific injury. In which event, upon filing such stipula tion, a rule may be entered dissolving the injunction and allowing

the defendants to proceed with the construction of their road through the plaintiff's land.

WELLES, J. concurred.

SELDEN, J. dissented.

Ordered accordingly.

[MONROE GENERAL TERM, December 3, 1851. *Welles, Selden* and *Johnson,* Justices.]